IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWEST DIVISION

| | |
|---|---|
| AMBER BOYER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:17-cv-05053-SRB |
| ) | |
| SCHNEIDER ELECTRIC HOLDINGS, INC. ) | |
| LIFE AND ACCIDENT PLAN, ) | |
| SCHNEIDER ELECTRIC HOLDINGS, INC., ) | |
| and UNUM LIFE INSURANCE COMPANY ) | |
| OF AMERICA, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court are Plaintiff's Motion for Summary Judgment (Doc. #38) and Defendants' Motion for Summary Judgment (Doc. #40). For the following reasons Plaintiff's Motion is GRANTED IN PART and Defendants' Motion is DENIED. The case is remanded to Unum for further consideration.

I.  Background

This case arises out of the denial of a claim for accidental death benefits following a single-car accident and subsequent death of the insured, Eric Boyer. Plaintiff, the sole beneficiary of Mr. Boyer's accidental death policy, alleges Defendants denied her claim for accidental death benefits because they determined Mr. Boyer's death was not an accident and Mr. Boyer died during the commission of crimes.

Mr. Boyer was employed by Schneider Electric Holdings, Inc. ("Schneider") and participated in a Life and Accident Plan ("the Plan") sponsored and administered by Schneider. (Doc. #43, p. 2). The Plan is an employee welfare benefit plan governed by the Employee

1

Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. Unum Life Insurance Company of America ("Unum") insures the benefits available under the Plan through a group insurance policy ("the Policy"). (Doc. #44, p. 2). The Policy grants Unum "discretionary authority to make benefit determinations under the Plan." (Doc. #43, p. 3). Mr. Boyer possessed $67,000 in basic life insurance coverage, which was paid to Plaintiff upon Mr. Boyer's death. Mr. Boyer also possessed $464,000 in total accidental death coverage that was not paid to Plaintiff and is at issue in this case. (Doc. #44, p. 3).

On January 22, 2016, Mr. Boyer died in a single-car accident in St. Louis County, Missouri, after his vehicle ran off the roadway and struck a tree. On April 7, 2016, Schneider filed a claim for life and accidental death benefits under the Plan on behalf of Plaintiff. (Doc. #44, p. 3). On April 11, 2016, Unum advised Plaintiff it would pay life benefits, but that it needed further information to determine whether it would pay accidental death benefits. (Doc. #43, p. 4). Upon reviewing Mr. Boyer's death certificate, the police report, the autopsy report, and the toxicology laboratory report, Unum denied Plaintiff's claim for accidental death benefits. (Doc. #44, pp. 3–4).

The police report cited "Speed-Exceeded Limit" and "Improper Passing" as "probable contributing circumstances" to Mr. Boyer's death. (Doc. #44, p. 4). Several witnesses reported Mr. Boyer was traveling westbound on Centaur Road at a high rate of speed as he entered the eastbound lane of traffic in a "No Passing Zone" to pass several vehicles when his vehicle ran off the roadway and struck a tree. (Doc. #43, pp. 4–5). The report also noted the speed limit at the site of the accident was either 25 or 35 miles per hour. (Doc. #43, pp. 5, 8). One witness, an off-duty police officer who observed Mr. Boyer approaching in his rear view mirror, stated he believed Mr. Boyer's vehicle was traveling approximately 80 miles per hour. (Doc. #43, p. 5).

2

There was no radar or other machine reading of the speed of Mr. Boyer's vehicle. (Doc. #43, pp. 4–5).

The medical examiner's report listed the manner of death as an accident caused by blunt craniocerebral and thoracic trauma. (Doc. #44, p. 3). A medicolegal investigator who investigated the scene of the car accident noted the road conditions were "somewhat slushy/icy with dry areas." (Doc. #44, p. 4). The toxicology laboratory report demonstrated there was no trace of drugs or alcohol in Mr. Boyer's system at the time of the car accident. (Doc. #44, p. 5).

In a letter to Plaintiff dated June 10, 2016, Unum denied the accidental death benefits claim based on (1) its conclusion that Mr. Boyer's death was not an "accidental bodily injury" under the Plan and (2) the "crime exclusion" in Mr. Boyer's plan that excludes coverage for "accidental losses caused by, contributed to by, or resulting from: . . . an attempt to commit or commission of a crime." (Doc. #44, p. 5). Specifically, Unum stated in the denial letter:

> Information from the police report indicates that your brother was passing vehicles in a no passing zone. In addition, according to a witness statement, he was driving approximately 80 miles per hour with the posted speed limit being 35 miles per hour. The speed at which he was driving, and passing other vehicles in a no passing zone, contributed to his motor vehicle accident, and in turn his death.

(Doc. #43, p. 6). Unum further stated that such traffic violations are considered misdemeanors under Mo. Rev. Stat. §§ 304.010 and 304.016. (Doc. #43, p. 7). Notably, Unum's internal policy manual states that "'Attempt to commit' or 'commission' policy language was intended to exclude disabilities/losses which result from an activity that would typically be classified as a crime (or felony, depending on policy language) . . . [and] was not intended to apply to activities which would generally be classified as traffic violations." (Doc. #44, p. 7).

On July 1, 2016, Plaintiff appealed the denial and on July 8, 2016, Unum issued a second letter denying accidental death coverage. (Doc. #44, p. 5). On April 11, 2017, through counsel,

3

Plaintiff again requested Unum reconsider its decision. (Doc. #44, p. 6). Unum responded by letter, informing Plaintiff the appeal process was complete and reaffirming its decision to deny coverage. (Doc. #44, p. 6). Plaintiff then brought this claim for "benefits due" under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).[1]

## II. Legal Standard

### A. Summary Judgment

A moving party is entitled to summary judgment on a claim "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine dispute over a material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"Once the moving party has made and supported their motion, the nonmoving party must proffer admissible evidence demonstrating a genuine dispute as to a material fact." *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011) (citation omitted). A party opposing summary judgment "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own

---

[1] Additionally, Plaintiff pled common law breach of contract in her Complaint (Doc. #1, p. 6). Defendants argue an ERISA "benefits due" claim preempts the breach of contract claim. Plaintiff did not challenge or otherwise respond to Defendants' preemption argument. Accordingly, the Court finds Plaintiff has abandoned the breach of contract claim.

4

conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 526–27 (8th Cir. 2007) (citation omitted). Summary judgment should not be granted if a reasonable jury could find for the nonmoving party. *Woodsmith Publ'g Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir. 1990) (citing *Anderson*, 477 U.S. at 248). When the Court analyzes cross-motions for summary judgment, each motion must be evaluated on its own merits. *Fox v. Transam Leasing, Inc.*, 830 F.3d 1209, 1213 (10th Cir. 2016). "The denial of one does not require the grant of another." *Christian Heritage Academy v. Oklahoma Secondary School Acitivites Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007). Both Plaintiff and Defendants in the instant case agree that there is no genuine dispute over any material fact. Further, both parties agree that because only a question of law remains to be resolved, i.e., whether Unum's decision to deny Plaintiff accidental death benefits was unreasonable, the case should be decided on summary judgment. (Doc. #39, p. 8; Doc. #44, p. 1).

### B. ERISA "Benefits Due" Claim

Where a plan administrator has "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the court reviews the administrator's decision for abuse of discretion. *Barnhart v. Unum Life Ins. Co. of Am.*, 179 F.3d 583, 587 (8th Cir. 1999). Under the abuse of discretion standard, a plan administrator's determination must be upheld unless the determination was unreasonable. *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005) (en banc). Additionally, "a plan administrator's decision is an abuse of discretion if it is not supported by substantial evidence." *McClelland v. Life Ins. Co. of N. Am.*, 679 F.3d 755, 759 (8th Cir. 2012). Where the same entity both insures the plan and makes benefits determinations, the court gives that conflict of interest some weight in the abuse of discretion analysis. *Id.*

## III. Discussion

Plaintiff contends Unum's interpretation of the Policy's language is an abuse of discretion because it was unreasonable to apply the crime exclusion in light of Unum's internal policy that traffic violations are not typically classified as crimes and for Unum to determine that Mr. Boyer's death was not an accidental bodily injury. Plaintiff further argues such determination was not supported by substantial evidence. Defendants argue Unum's decision to apply the crime exclusion was reasonable and based on substantial evidence. Defendants also contend that if the Court finds Unum erroneously applied the crime exclusion, the Court should remand the case for further consideration of whether Mr. Boyer's death was accidental under the Plan.

### A. Crime Exclusion

#### 1. Reasonableness

"[W]here plan fiduciaries have offered a reasonable interpretation of disputed provisions, courts may not replace it with an interpretation of their own. . . ." *Manning v. Am. Republic Ins. Co.*, 604 F.3d 1030, 1042 (8th Cir. 2010). The Eighth Circuit outlined five factors in *Finley v. Special Agents Mut. Ben. Ass'n, Inc.* to aid in determining whether a denial of benefits is reasonable. 957 F.2d 617, 621 (8th Cir. 1992). "Whether a plan administrator's decision to deny benefits is reasonable requires consideration" of the *Finley* factors. *Smith v. United Television, Inc. Special Severance Plan*, 474 F.3d 1033, 1036 (8th Cir. 2007). Those factors are:

> (1) whether the interpretation is consistent with the goals of the plan;
> (2) whether it renders any language in the plan meaningless or internally inconsistent;
> (3) whether it conflicts with the substantive or procedural requirements of ERISA;

> (4) whether [Unum] has interpreted the provisions at issue here consistently; and
>
> (5) whether the interpretation is contrary to the clear language of the plan.

*McClelland*, 679 F.3d at 759 (citing *Finley*, 957 F.2d at 621).

### a. *Finley* Factor 1 – Consistency with Goals

The first *Finley* factor asks whether the plan administrator's "interpretation is consistent with the goals of the Plan." *Finley*, 957 F.2d at 621. Plaintiff argues that Unum's interpretation of the crime exclusion as including speeding and improper passing is not consistent with the goals of the Plan, which, according to Plaintiff, are to provide coverage for accidents and "protect[] the interests of plan beneficiaries . . . ." *Nichols v. Unicare Life & Health Ins. Co.*, 739 F.3d 1176, 1184 n.4 (8th Cir. 2014). Defendants contend Unum's interpretation is consistent with its goals of excluding accidents caused by the commission of or attempt to commit a crime in order to shift the costs of "self-destructive" behavior.

The Court finds Unum's interpretation of the crime exclusion is inconsistent with the goals of the Plan. The primary goal of the Plan, and specifically accidental death coverage, is to provide benefits in the case of the insured's accidental death. To apply the crime exclusion to traffic violations is inconsistent with this goal and with the overall goal of ERISA under § 1001 of protecting the interests of plan beneficiaries, particularly when crimes are not defined under the Plan and Unum's own policy instructs that the crime exclusion was not intended to apply to traffic violations. Further, while Defendants contend the inclusion of a crime exclusion in an accidental death plan serves to shift the costs of self-destructive behavior, here, as discussed below, substantial evidence is lacking to show that Mr. Boyer was committing a crime. Without substantial evidence supporting this conclusion, it cannot be reasonably argued that treating Mr.

Boyer's death as resulting from the commission of a crime is consistent with Defendants' proffered goal.

### b. *Finley* Factor 2 – Renders Any Language Meaningless

The second *Finley* factor tests whether the insurer's "interpretation renders any language in the Plan meaningless or internally inconsistent." *Finley*, 957 F.2d at 621. Plaintiff argues Unum's interpretation of the crime exclusion creates a blanket exclusion rendering the entire accidental death policy meaningless because it allows denial of coverage for a car accident under an accidental death policy. Plaintiff contends "by excluding something as trivial as speeding or passing in a no passing zone in a 'crime exclusion' Unum undermines the very title of the Policy—Accidental Death and Disability." (Doc. #47, p. 7). Defendants argue Unum's interpretation does not render any language meaningless because the Plan would still cover car accidents not caused by crimes, such as one involving the innocent victim of a two-vehicle car crash.

The Court finds Unum's determination in Mr. Boyer's case unreasonably limits coverage for accidents by including traffic violations in its interpretation of crime. Such a far-reaching construction of the "crime" exclusion is inconsistent with Unum's own internal claims manual. The claims manual instructs: "When administering a crime exclusion . . . 'Attempt to commit' or 'commission' policy language was intended to exclude disabilities/losses which result from an activity that would typically be classified as a crime (or felony, depending on policy language) under state or federal law" and "was not intended to apply to activities which would generally be classified as traffic violations." (Doc. #39-1, p. 1). By interpreting speeding and passing in a no passing zone as crimes, Unum disregarded its own policy directing that traffic violations are not to be construed as crimes, rendering the claims manual language meaningless.

### c. *Finley* Factor 3 – Conflict with the Substantive or Procedural Requirements

The third *Finley* factor examines whether an insurer's "interpretation conflicts with the substantive or procedural requirements of ERISA." *Finley*, 957 F.2d at 621. Plaintiff argues Unum's interpretation conflicts with the substantive requirements of ERISA, which require the plan to be "written in a manner calculated to be understood by the average plan participant," 29 U.S.C. § 1022(a), because a reasonable person would not consider speeding and improper passing to be crimes. Plaintiff states that while Unum did not define "crime" in the language of the Policy and has accordingly taken the liberty of defining it broadly in this instance, the average plan participant would consider crimes to be serious violations of the law. Plaintiff also notes that in its initial denial letter Unum stated, "Even if the crimes were classified as violations or infractions . . . they would still be crimes." (Doc. #43, p. 14). Plaintiff contends this interpretation "reduces 'accident insurance' to insurance only for strange, unforeseeable injuries or for injuries in which the victim was passive rather than active," which is contrary to a reasonable policyholder's interpretation. *King*, 414 F.3d at 1008.

Defendants argue Unum's interpretation poses no conflict with ERISA requirements. They argue the point of the § 1022(a) requirement is to ensure the plan administrator does not "rely on some exotic definition outside the realm of reasonable." (Doc. #48, p. 11). Defendants state Unum relied on an ordinary dictionary definition of crime and, therefore, its interpretation did not conflict with ERISA. Defendants also refute Plaintiff's position that including infractions in the definition of "crime" would undermine the purpose of accident insurance, arguing that a number of accidents, such as those in which a driver was not committing a crime, would not be susceptible to the crime exclusion.

The Court finds Unum's interpretation of the Plan conflicts with the requirements of ERISA. Interpreting the crime exclusion to include traffic violations conflicts with the requirements of § 1022(a). Defendants failed to define crimes under the Plan, and it is unreasonable to believe the average plan participant could anticipate Unum would construe the concept of crime in such a broad manner as to include traffic violations. Further, as the Court discussed in its analysis of the third *Finley* factor, including speeding and passing in a no passing zone as crimes under the crime exclusion unreasonably limits accidental death coverage, which is contrary to a reasonable policyholder's understanding and in conflict with §1022(a). The Court also finds Unum's interpretation conflicts with §1022(b), which requires that the plan description contain "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." The Plan does not state that traffic violations will result in denial of or ineligibility for benefits. To the contrary, Unum's internal claims manual states the opposite: that the crime exclusion was not intended to apply to traffic violations. Therefore, Unum's interpretation of the crime exclusion conflicts with ERISA requirements under § 1022(a)–(b).

### d. *Finley* Factor 4 – Interpret Provisions Consistently

The fourth factor under *Finley* asks whether the plan administrator has interpreted the provisions at issue consistently. *Finley*, 957 F.2d at 621. Plaintiff argues Unum's application of the crime exclusion is inconsistent with its internal claims manual, which instructs that the crime exclusion "was not intended to apply to activities which would generally be classified as traffic violations." (Doc. #39, p. 22). Defendants argue Unum did not depart from its policy by applying it to Mr. Boyer's case. Even still, Defendants cite *Heimeshoff v. Hartford Life & Accid. Ins. Co.*, 571 U.S. 99, 108 (2013), for the proposition that the claims manual, which contains such language, is not a legally binding document and does not override the Plan language.

However, *Heimeshoff* addressed the enforceability of Plan language providing a 3-year statute of limitations, and did not involve a crime exclusion or a claims manual of any sort.

Defendants further argue Unum has consistently applied the crime exclusion. In support of this assertion, Defendants cite *Oomrigar v. Unum Life Ins. Co. of Am.*, No. 16-cv-940, 2017 WL 3913277 (D. Utah Sept. 6, 2017) and *Caldwell v. Unum Life Ins. Co. of Am.*, 271 F. Supp. 3d 1252 (D. Wyo. 2017), *appeal docketed*, No. 17-8078 (10th Cir. Oct. 19, 2017). In both cases the court upheld Unum's decision to apply the crime exclusion and deny accidental death benefits. *Oomrigar* involved a policy holder who was speeding and evading the police when his motorcycle crashed and he died. 2017 WL 3913277, at *1. Unum applied the crime exclusion after an investigation in which Unum phoned a sergeant who was at the scene of the accident, attempted to contact the sergeant who was in pursuit of Oomrigar leading up to the accident, and spoke with a representative of the county attorney's office, who advised that Oomrigar would have been charged for reckless driving and evading the police if he had survived the accident. *Id.* at *4. In *Caldwell*, a policy holder was speeding when he lost control of his vehicle and, as a result, was ejected from the vehicle and died. 271 F. Supp. 3d at 1255–56. Unum applied the crime exclusion and supported its decision by relying on a highway patrol trooper's report he produced after an investigation. *Id.* In the report, the trooper detailed his forensic mapping of the scene, including an analysis of tire marks, to determine the exact speed the decedent's car was traveling at the time it crashed. *Id.*

The Court finds Unum's application of the crime exclusion here is inconsistent with its own internal claims manual, which states the exclusion "was not intended to apply to activities which would generally be classified as traffic violations." (Doc. #44, p. 7). Unum has presented no substantial evidence establishing Mr. Boyer's actions were consistent with criminal behavior

11

rather than traffic violations. Moreover, Unum's argument that its interpretation here is consistent with prior interpretations in *Oomrigar* and *Caldwell* is inaccurate. As detailed above, in both of those cases, Unum relied on substantial evidence resulting from thorough and detailed investigations in making its decision to apply the crime exclusion. To the contrary, in this case, Unum declined to investigate and instead decided to deny accidental death benefits based on witness statements and "probable contributing circumstances" listed in the police report. Therefore, Unum has not interpreted the crime exclusion consistently.

### e. *Finley* Factor 5 – Contrary to Clear Language

The fifth *Finley* factor examines whether the insurer's "interpretation is contrary to the clear language of the Plan." *Finley*, 957 F.2d at 621. Plaintiff argues Unum's interpretation is contrary to the plain language of the Plan in that the crime exclusion as written does not include traffic violations. Defendants argue Unum's interpretation is consistent with the plain language of the Plan because speeding and passing in a no passing zone are misdemeanors under Missouri law and because misdemeanors are considered crimes according to the dictionary.

The Court finds Unum's interpretation of the crime exclusion is contrary to the plain language of the Plan. The crime exclusion in Mr. Boyer's plan excludes coverage for "accidental losses caused by, contributed to by, or resulting from: . . . an attempt to commit or commission of a crime." This language does not demonstrate an exclusion of coverage for accidents resulting from the insured's traffic violations. To allow Defendants' construction to stand would allow Unum to deny coverage every time a plaintiff was caught speeding even one mile per hour over the speed limit. To construe the crime exclusion to include such violations is contrary to the plain language of the Plan.

12

## 2. Substantial Evidence

"A plan administrator's decision is an abuse of discretion if it is not supported by substantial evidence." *McClelland*, 679 F.3d at 759. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *King*, 414 F.3d at 999. The court cannot "substitute its own weighing of evidence for that of the [administrator]." *Cash v. Wal-Mart Group Health Plan*, 107 F.3d 637, 641 (8th Cir. 1997).

Plaintiff emphasizes that Unum did not attempt to investigate by actually interviewing witnesses or to otherwise determine what speed limit applied to the stretch of road on which Mr. Boyer's crash occurred or at what speed Mr. Boyer's car was actually traveling at the time of the accident. Plaintiff states there was no accident reconstruction done to prove that speeding or improper passing contributed to Mr. Boyer's death and that there is no substantial evidence to conclude that the area was in fact a no passing zone. Plaintiff cites *Glenn v. Metlife* for the proposition that failure to consider meaningful evidence and undertake a thorough investigation renders a benefits denial an abuse of discretion. 461 F.3d 660 (6th Cir. 2006). Plaintiff argues Unum chose to make its decision to deny coverage by giving significant weight to witness statements and minimizing consideration of evidence such as the medicolegal investigator's report noting icy roads and the medical examiner's determination that the manner of death was an accident. Plaintiff further argues Unum failed to inquire with relevant authorities as to whether charges would have been filed against Mr. Boyer and failed to speak to any witnesses, investigators, or reporting officers. Plaintiff states that Unum failed to conduct a meaningful investigation and instead opted to rely on a file review, which should be considered in assessing whether the decision to deny coverage was reasonable. *Id.* at 671.

Defendants claim substantial evidence, including the police report and autopsy report, supports Unum's decision. They argue Unum did not need to investigate because the police report already captured the police officer's and witnesses' thoughts. Defendants further state Plaintiff has not cited any authority about the extent of investigation required before applying the crime exclusion and argue, "District courts do not second guess the investigation"; rather, they "only review . . . the evidence in front of Unum and determine if substantial evidence supports the decision." (Doc. #48, pp. 13–14).

The Court finds Unum's interpretation of the Plan was not supported by substantial evidence. It is unreasonable to define an insured's behavior as criminal based solely on witness statements and "probable contributing circumstances" contained within a police report. The police report contained no detailed analysis of the scene of the accident and no independent police investigation findings. Unum applied the crime exclusion to this claim without any evidence of the posted speed limit at the location of the car accident, of what speed Mr. Boyer's car was traveling, or that speed or improper passing in fact caused or contributed to causing Mr. Boyer's death. Unum also failed to meaningfully consider the medicolegal investigator's report noting icy roads and the medical examiner's determination that the manner of death was an accident.

Without substantial evidence available upon which Unum could rely, Unum arbitrarily concluded Mr. Boyer's conduct and cause of death was criminal in nature. Unum forewent any meaningful investigation or attempt to contact the reporting officers, investigators, prosecutors, or any authority whatsoever to obtain any substantial evidence regarding the circumstances surrounding Mr. Boyer's death. Unum did not contact a single witness in the claim review process. Instead, Unum relied on a file containing unsubstantiated and speculative information.

14

Accordingly, Unum abused its discretion by concluding Mr. Boyer's car accident was caused by his own criminal activity without any substantial evidence in support.

In sum, the Court finds Unum abused its discretion in denying accidental death benefits based on the Plan's crime exclusion in that its determination was unreasonable under the *Finley* factors and not supported by substantial evidence.

### B. Accident

Plaintiff argues Unum used the incorrect standard in determining Mr. Boyer's death was not an accident under the Plan. Plaintiff contends that to determine whether an occurrence was an accident, an insurer must apply the framework established in *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077 (1st Cir. 1990), discussed extensively in *King,* 414 F.3d. Under *Wickman*, Unum must consider whether "a reasonable person . . . would have viewed the injury as *highly likely* to occur as a result of the insured's intentional conduct." *Id.* at 997 (emphasis added). Plaintiff states and Defendants concede Unum applied a "reasonably foreseeable" standard in determining that Mr. Boyer's death was not accidental. Both parties acknowledge that in *King*, an insurer also applied the "reasonably foreseeable" standard in determining whether a beneficiary was entitled to accidental death benefits and the Eighth Circuit remanded the case to the insurer to apply the *Wickman* standard. (Doc. #44, p. 20; Doc. #39, p. 15) (citing *King*, 414 F.3d at 1002–1006).

Under *Wickman*, "an event is an accident if the decedent did not subjectively expect to suffer 'an injury similar in type or kind to that suffered' and the suppositions underlying that expectation were reasonable." *Nichols*, 739 F.3d at 1182 (quoting *Wickman*, 908. F.2d at 1088). The determination of whether the suppositions were reasonable "should be made from the perspective of the insured, allowing the insured a great deal of latitude and taking into account

15

the insured's personal characteristics and experiences." *Id*. If the decedent's subjective expectation cannot be determined, the inquiry is whether "a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as *highly likely to occur* as a result of the insured's intentional conduct." *Id*.

As Defendants argue, the Court finds the proper remedy under *King* is to return the case to Unum for reconsideration of the "accident" determination under the *Wickman* standard so the Court may conduct a proper review. In *King*, the Eighth Circuit noted that "by asserting that the *Wickman* test of 'highly likely to occur,' rather than a 'reasonably foreseeable' standard, should govern whether [plaintiff] is entitled to 'accidental death benefits' under the plan, [the insurer] effectively concedes that it applied the wrong definition of 'accidental' in denying the claim." *King*, 414 F.3d at 1005. The Court then held that "the proper remedy is to return the case to the administrator for reevaluation of the claim under what [the insurer] says is the correct standard." *Id*. The Court emphasized that under ERISA, the courts have "a range of remedial powers," which often includes remanding a case back to the plan administrator for further consideration. *Id*. Like the insurer in *King*, Unum conceded that it employed the "reasonably foreseeable" standard in denying accidental death benefits and urges the Court to remand the case so that it can apply the *Wickman* standard. Accordingly, this Court finds the proper remedy under *King* is to return the case to Unum for reconsideration of the "accident" determination under the *Wickman* framework.

### C. Attorney's Fees

Plaintiff argues she is entitled to attorney's fees under ERISA § 502(g), 29 U.S.C. § 1132(g). Defendants assert a request for attorney's fees is not ripe pre-judgment under Federal Rule of Civil Procedure 54(d). Under ERISA, "a fees claimant must show 'some degree of

success on the merits' before a court may award attorney's fees under §1132(g)(1)." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)). "Achieving 'trivial success on the merits' or a 'purely procedural victor[y]'" is not enough. *Id.* (quoting *Ruckelshaus*, 463 U.S. at 688). The test is satisfied "if the court can fairly call the outcome of the litigation some success on the merits without conducting a 'lengthy inquir[y] into the question whether a particular party's success was substantial or occurred on a central issue.'" *Id.* (internal quotations omitted).

The Court finds Plaintiff's argument that she is entitled to attorney's fees assumes the Court agrees with her position that she is "entitled to her full payment of the accidental death benefits[.]" (Doc. #39, p. 27). The Court does not find in Plaintiff's favor on this point, but instead remands for further consideration by Unum. Accordingly, Plaintiff's request for attorney's fees is denied without prejudice. Given that this Order grants Plaintiff's Motion for Summary Judgment on the issue of the "crime exclusion" and remands the case to Unum for proper analysis of the "accident" issue, Plaintiff may move for attorney's fees after Unum decides the "accident" issue under the *Wickman* framework.

## IV. Conclusion

The Court finds Unum abused its discretion in denying Plaintiff accidental death benefits based on the Plan's crime exclusion in that its determination was unreasonable and not supported by substantial evidence. Accordingly, Plaintiff's Motion for Summary Judgment (Doc. #38) is GRANTED IN PART and Defendants' Motion for Summary Judgment (Doc. #40) is DENIED. The Court remands the case to Unum for further consideration of the "accident" determination under the *Wickman* standard.

**ORDERED** that Unum reconsider its determination that Mr. Boyer's car accident was not an "accident" under the *Wickman* standard and file a joint status report within 30 days.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: October 10, 2018